UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JILLIAN PIERCE, NICOLE WWAD, VINCENT KEITH BELL, on behalf of herself and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN FRANCISCO, VICKI HENNESSEY, MICHELE FISHER, and DOES 1-50,<br><br>Defendants. | Case No. 19-cv-07659-JSW<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 45 |

Now before the Court is the motion to dismiss filed by Defendants City and County of San Francisco and Vicki Hennessy, Sheriff Paul Miyamoto, and Michelle Fisher (collectively "Defendants"). Defendants move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). Having reviewed the pleadings and the record in this case, the Court DENIES Defendants' motion to dismiss.

**BACKGROUND**

Plaintiffs are former and current pretrial detainees at San Francisco Jail No. 2 operated by Defendants. Plaintiffs allege that they have been deprived rights secured by the United States Constitution and state law based on their deprivation of outdoor recreation opportunities and for being regularly subjected to male deputies watching unclothed body cavity searches.

Additional specific facts shall be addressed in the body of this order.

**ANALYSIS**

**A.   Legal Standard on Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the

1  pleadings fail to state a claim upon which relief can be granted. A court's "inquiry is limited to
2  the allegations in the complaint, which are accepted as true and construed in the light most
3  favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even
4  under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the
5  'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a
6  formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v.
7  Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
8  Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must
9  instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A
10 claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw
11 the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,
12 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990). However, "[t]he district court's discretion to deny leave to amend is … broad where plaintiff has previously amended the complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (internal quotations and citation omitted).

**B.     Outdoor Recreation Claims.**

Plaintiffs allege that Defendants deny them and all prisoners in County Jail No. 2 access to outdoor recreation and direct sunlight based on the jail's deliberate design and logistical limitations. The Court finds that the right to some form of outdoor recreation for pretrial detainees and prisoners alike is clearly established.

The binding cases addressing the rights of prisoners to recreation and access to daylight support the contention that some sort of outdoor recreation is required. *See, e.g., Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) (holding that "[t]here is substantial agreement among the cases in this area that some form of regular outdoor exercise is extremely important to the psychological and physical well being of the inmates."); *Toussaint v. Yockey*, 722 F.2d 1490,

2

1492 (9th Cir. 1984) (holding that under certain conditions, the deprivation of outdoor exercise to inmates raises serious constitutional issues); *see also Allen v. Sakai*, 48 F.3d 1082, 1084 (9th Cir. 1994) ("After *Spain* and *Toussaint*, defendants cannot legitimately claim that their duty to provide regular outdoor exercise to [the plaintiff] was not clearly established.").

It is clearly established that "[e]xercise is one of the basic human necessities protected by the Eighth Amendment . . . Moreover, the Fourteenth Amendment requires that pre-trial detainees not be denied adequate opportunities for exercise without legitimate governmental objective." *Pierce v. County of Orange*, 526 F.3d 1190, 1211-12 (9th Cir. 2008). Furthermore, the lack of outdoor space in the facility may be solely a logistical problem, and, without more, the facility design "cannot justify serious civil rights violations such as the 'deprivation of a basic human need.'" *Shorter v. Baca*, 895 F.3d 1176, 1186 (9th Cir. 2018) (quoting *Allen*, 48 F.3d at 1185).

Accordingly, the Court finds that Plaintiffs may allege that their constitutional rights were violated as a result of the systematic deprivation of outdoor recreation time.

### C.   Unclothed Body Cavity Searches Claims.

Plaintiffs also allege that their constitutional rights secured by the Fourteenth Amendment have been violated as a result of being subjected to unclothed body cavity searches in view of male guards. A court must examine any search to determine its reasonableness under the circumstances. Cross-gender strip searches in the absence of an emergency may violate an inmate's right under the Fourteenth Amendment to be free from unreasonable searches. *See Byrd v. Maricopa County Sheriff's Dep't*, 629 F.3d 1135, 1146 (9th Cir. 2011) (en banc). The Court in *Byrd* reaffirmed its "longstanding recognition that '[t]he desire to shield one's unclothed figure from [the] view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." *Id.* at 1141 (quoting *York v. Story*, 324 F.2d 450, 455 (9th Cir. 1963)).

Whether any particular set of circumstances makes a search reasonable under the Fourteenth Amendment requires a case-by-case factual analysis which balances "the need for the particular search against the invasion of personal rights that the search entails." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). The Court must balance and consider the following factors:

3

1  "(1) the scope of the particular intrusion, (2) the manner in which it is conducted, (3) the
2  justification for initiating it, and (4) the place in which it is conducted." *Id.* (citations omitted).
3  Depending upon the circumstances and the specific facts of any particular search, the examining
4  court may recognize "that not all strip search procedures will be reasonable; some could be
5  excessive, vindictive, harassing, or unrelated to any legitimate penological interest. Thus our task
6  is to consider carefully the reasonableness of [the prison's] strip search policies." *Michenfelder v.*
7  *Sumner*, 860 F.2d 328, 332 (9th Cir. 1988).

8  Here, Plaintiffs allege that on at least two occasions, they were subjected to unclothed
9  body cavity searches while male sheriff's deputies were permitted to watch, with one deputy
10 commenting that he did not have a girlfriend and had found the plaintiffs attractive. (*See* FAC ¶¶
11 26-29.) Plaintiffs allege that they were in their pod at the time of the searches, and that they were
12 forced to undress, squat, cough, and spread open their vaginas and anuses, and lift their breasts for
13 visual inspection. (*See id.* at ¶¶ 26, 28.) They allege the searches were conducted indiscriminately
14 and occurred early in the morning and that they were woken up from sleep in order to be searched.
15 (*See id.*) The allegations do not indicate there was any particular emergency or urgency
16 necessitating the searches. These allegations further indicate that the male officers did not
17 incidentally view the unclothed female inmates, but rather were watching for at least some time.

18 The reasonableness of the search must be determined by the case-by-case weighing and
19 balancing of the facts. However, as alleged, Plaintiffs have set out sufficient facts to make out a
20 claim that the viewing of the unclothed cavity searches by male deputies may violate their
21 constitutionally protected rights under the Fourteenth Amendment. Accordingly, the Court finds
22 that Plaintiffs may allege that their constitutional rights were violated as a result of the cross-
23 gender viewing of unclothed body cavity searches.

24 **D.   Qualified Immunity.**

25 In their motion to dismiss, Defendants argue that the officers involved in the alleged
26 deprivations of Plaintiffs' constitutional rights are entitled to qualified immunity for their conduct.
27 Qualified immunity "shields an officer from suit when she makes a decision that, even if
28 constitutionally deficient, reasonably misapprehends the law governing the circumstances she

4

confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). A claim for qualified immunity requires the court to evaluate the defense using a two-step inquiry in *Saucier v. Katz*, 533 U.S. 194 (2001). The first step is to determine whether, given the undisputed facts, the officers violated a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Under the second step of *Saucier*, the issue is whether the allegedly violated constitutional rights was "clearly established" in the specific factual context confronting the officers. *See Saucier*, 533 U.S. at 202. "If an official could reasonably have believed her actions were legal in light of clearly established law and the information she possessed at the time, she is protected by qualified immunity." *Franklin v. Fox*, 312 F.3d 423, 437 (9th Cir. 2002). Courts may choose which prong of this analysis to address first. *See Pearson*, 555 U.S. at 236-39. Examining the second prong first may "expedite the resolution of the case" because the second prong may be decided as a matter of law. *Morales v. Fry*, 873 F.3d 817, 822-23 (9th Cir. 2017).

The Court begins and ends its analysis with the second factor.

A federal right is "clearly established" when, at the time of the official's conduct, the law was "sufficiently clear that every reasonable official would understand" that what he or she was doing was unlawful. *District of Columbia v. Wesby*, 138 S. Ct. 527, 589 (2018) (citations and quotations omitted). For a right to be clearly established, the law must be "settled"—the constitutionality "beyond debate"—with a sufficiently clear foundation in "then-existing precedent." *Id.*; *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). It is not enough that the right in question is "suggested" by precedent existing at the time of the official's challenged conduct. *Wesby*, 138 S. Ct. at 590. Rather, a rule must be dictated by controlling authority or a "robust consensus of cases of persuasive authority." *Id.* at 589-90 (citations and quotations omitted). The precedent must be sufficiently clear so that "every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* (citation omitted). The Court must therefore ask whether every reasonable official in Defendants' positions would have known that their specific actions were unconstitutional, given the particular facts that they faced and the "precedent on the books." *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016) (citation and quotation omitted); *see Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015) (noting that the second-prong

inquiry depends "very much on the facts of each case"). The burden is on the party contesting qualified immunity to show that a law was clearly established at the time of an alleged violation. *Davis v. Scherer*, 468 U.S. 183, 197-98 (1984).

Because the Court has found that Plaintiffs have sufficiently alleged facts to state causes of action for violation of their constitutional rights to outdoor recreational opportunities and freedom from the non-emergent cross-gender cavity searches, the Court finds that, at the pleading stage, Plaintiffs have met their burden to present allegations that "state a claim for violation of clearly established law." *Mitchell v. Forsyth*¸ 472 US. 511, 526 (1985). The Court finds that Defendants are not, at this procedural stage, entitled to the defense of qualified immunity.[1]

### E.   Bane Act Claims.

Defendants also contend that California Government Code section 844.6, which grants public entities immunity for injuries to prisoners, bars liability against the City for Plaintiffs' Bane Act claims. This provision applies equally to preconviction detainees as it does convicted prisoners. *See* Cal. Gov't Code § 844; *see also Sahley v. County of San Diego*, 69 Cal. App. 3d 347, 349 (1977) (holding that "preconviction detainee awaiting trial" who has been "booked and arraigned" was considered a "'prisoner' for purposes of governmental immunity").

California Government Code section 820.6 provides that "[i]f a public employee acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid, or inapplicable, he is not liable for an injury caused thereby." Under this section, "'good faith' reflects a subjective intention to act under the authority of the governing enactment, and to enforce or comply with those rules." *O'Toole v. Superior Court*, 140 Cal. App. 4th 488, 505 (2006). Defendants argue that because Plaintiffs have not pled any facts to

---

[1] Defendants also argue that the Court should dismiss the claims against the individual defendants in their individual capacities. However, a supervisor may be held liable where there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). Because Plaintiffs allege that the individual defendants had ultimate responsibility for the policy and training in the County jails, they may seek to hold the individuals accountable for the failure to train, supervise, and control their subordinates regarding cavity searches and for failure to provide outdoor recreation opportunities pursuant to the County jails' policy, custom, or practice.

1 demonstrate malicious intent by the Defendants and because no constitutional violations occurred,

2 they should be found immune from liability.

3 However, Plaintiffs do not allege that the conduct was taken in an effort to enforce a law or policy, but rather, allege that the conduct was a clear violation of well-established law. The good faith immunity for carrying out a constitutional law or policy is not applicable under these circumstances.

Defendants also contend that Plaintiffs may not proceed as potential class representatives because they failed to present their claims properly under the Claims Act. In order to comply with the procedural requirements, a plaintiff in a potential class action must present a timely claim on behalf of the class that includes the name, address, and other specific information concerning the representative plaintiff and sufficient information to identify the class itself. *See City of San Jose v. Superior Court*, 12 Cal. 3d 447, 452 (1974). Plaintiffs are obligated to provide the descriptions of injury or damage or loss so far as it may be known at the time of the presentation of the claim. *See Blair v. Superior Court*, 218 Cal. App. 3d 221, 224 (1990). The policy underlying the claims presentation requirements is to afford proper notice to public entities so as to permit early investigation and evaluation of the claim without incurring the expense of litigation. *See San Jose*, 12 Cal. 3d at 452.

Here, it appears that Plaintiff Pierce filed multiple claims alleging that she was being deprived proper recreation opportunities. Although she did not specify that the recreation should be made possible outdoors, the Court finds she provided multiple grievances giving the City sufficient notice that a reasonable investigation and evaluation of the claims could have been made without incurring the expense of litigation. The Court also finds that the grievances were in substantial compliance with the requirements to proceed on behalf of a class. *See, e.g., Craft v. County of San Bernadino*, 2006 WL 4941829, at *4-6 (C.D. Cal. Mar. 23, 2006) ("The fact that class representatives Craft and Hardy did not file a California Tort Claim prior to filing of the instant lawsuit does not serve to foreclose their ability to pursue any of the state law claims pressed in their complaint as one of the class representatives did submit a class claim that was in substantial compliance with Government Code section 910."). California Government Code

section 910 does not require claimants to describe all indebtedness, obligation, injury, damage, or loss incurred. Rather, claimants are obligated to provide descriptions of indebtedness, obligation, injury, damage, or loss so far as it may be known at the time of presentation of the claim. *See Blair v. Superior Court*, 218 Cal. App. 3d 221, 224 (1990) ("As long as these general elements are present, it is not necessary that the claim comply with formal pleading standards."). The Court finds that the fifteen grievances filed by Plaintiff Pierce are sufficient to give notice of the claims presented here.

## CONCLUSION

Based on the foregoing, the Court DENIES Defendants' motion to dismiss.

IT IS SO ORDERED.

Dated: January 14, 2021

_____
JEFFREY S. WHITE
United States District Judge

United States District Court
Northern District of California